**Michael BUNJER, Plaintiff,**

v.

**William and Sarah EDWARDS, Licensees DBA/ McDonald's Corporation, Defendants.**

No. Civ.A. 96–01136(SS).

United States District Court, District of Columbia.

Dec. 23, 1997.

Steven Gary Polin, Washington, DC, for plaintiff.

Gary Brooks Mims, Brault, Palmer, Grove, Zimmerman, White & Mims, Fairfax, VA, for defendants.

## MEMORANDUM OPNION

SPORKIN, District Judge.

This matter is before the Court on Count I of Plaintiff's Second Amended Complaint. Plaintiff seeks injunctive relief pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* In addition, Plaintiff's complaint alleged in Counts II, III, IV and V that Defendants are liable for assault and battery, false arrest, false imprisonment, and intentional infliction of emotional distress. The case went to trial before a jury on Counts II through V. Simultaneously, the Court heard Count I, the ADA claim. At the conclusion of Plaintiff's case, Defendants moved pursuant to Fed.R.Civ.P. 50 for judgment as a matter of law as to all of Plaintiff's causes of action. The Court dismissed three of Plaintiff's causes of action. *See* Memorandum Opinion of December 22, 1997. The cause of action for intentional infliction of emotional distress went to the jury, which rendered a verdict in favor of the Plaintiff for $1500. The Court reserved its decision on the ADA cause of action. After the conclusion of the trial, the Court held an additional hearing on the matter. Below, the

Court will address Plaintiff's ADA claim and set forth its findings of fact and conclusions of law.

## I. FINDINGS OF FACT

On May 21, 1995, Plaintiff Bunjer attempted to place an order at the drive-through facility of Defendants' McDonald's restaurant, located at 75 New York Avenue, N.E., Washington, D.C. The drive-through facility required the customer to order from a displayed menu through a speaker before proceeding to the window to pay for the food. Plaintiff, who is deaf, could not place his order in this manner. He drove directly to the drive-through window and attempted to place his order (which consisted of a Big Mac, french fries, and a large Sprite) by writing it down on a piece of paper. His order was initially refused, and he was told to park his car and come inside to place the order. Plaintiff insisted upon being treated like everyone else by being served at the window. Because of the back-up of persons in automobiles waiting behind Plaintiff, the Defendants' employees in charge of the drive-through eventually decided to serve Plaintiff. Plaintiff stated that he observed that the employees were snickering as they brought his order to the window. He testified that he was given the wrong change and warm water with a white substance instead of Sprite.

Plaintiff went inside the restaurant to complaint about not receiving the correct change and drink. Once in the restaurant, the employees ignored him. When he placed his order on the counter, some of the drink spilled on the counter. Officer Jed Worrell, an off-duty police Metropolitan Police Department officer who was employed by Defendants to serve as a part-time security guard at their McDonald's restaurant, attempted to communicate with Plaintiff. He saw that Plaintiff was displeased with his treatment and told the McDonald's personnel to refund Plaintiff's money. When Officer Worrell saw that Plaintiff did not accept the refund and continued to be irate, he ordered Plaintiff to leave the premises. When Plaintiff refused to leave, Officer Worrell forcibly restrained and arrested him.

Plaintiff was taken to the local precinct and held in custody for approximately six hours. He posted twenty-five dollars for collateral and was released in the early morning hours of May 22, 1995. Plaintiff took a cab back to the McDonald's restaurant to retrieve his car. Upon reaching the restaurant, Plaintiff discovered that his car keys had not been returned to him. After a short conversation with the employees of the McDonald's restaurant, Plaintiff went home. Subsequently, he hired a locksmith to let him into his car. In connection with the incident, Plaintiff was arrested, spent six hours in custody, and incurred expenses ($25 for collateral, $40 for the cab fare, and $60 for the locksmith).

## II. CONCLUSIONS OF LAW

Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, mandates that disabled people be provided equal access to public accommodations. A place of public accommodation, such as a restaurant, is required by the ADA to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services ..." 42 U.S.C. § 12182(b)(2)(A)(iii). Failure to do so constitutes discrimination within the meaning of the ADA, for which an individual may seek injunctive relief. 42 U.S.C. § 12188(a).

■ In this case, the Court finds that the Defendants' drive-through facility discriminates against the deaf and those with hearing impairments. Under the current system, deaf and hearing impaired patrons have no way to make use of the drive-through facility. There is an easy way to make provision for these patrons. All that needs to be done is for the restaurant to put up a sign at the initial speaker/menu point instructing deaf patrons to proceed directly to the window to have their orders filled.

■ Additionally, the employees of Defendant's McDonald's franchise were inadequately trained to deal with the special needs of deaf and hearing impaired patrons. Defendants' McDonald's restaurant is located in

close proximity to Gallaudet University, the foremost national university devoted entirely to the deaf and the hearing impaired. Defendant William Edwards testified that because of its location near the university, his McDonald's franchise typically serves about twenty-five deaf persons per day. Despite the numerous deaf patrons at the restaurant, Defendant has in place no policies or training to instruct employees about the special needs of such customers. The circumstances in this case illustrate that the employees of Defendants' restaurant were far from capable of dealing effectively with deaf patrons. Had Defendants provided adequate training to their employees, the offensive treatment of the Plaintiff that occurred in this case might have been avoided. Accordingly, the Court will order Defendants to implement policies and provide training for their employees to accommodate the deaf and hearing impaired. Although the injunction will be limited to Defendants' McDonald's franchise, *see Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733 (5th Cir.1977) ("[A] nationwide or companywide injunction is appropriate only when the facts indicate a company policy or practice in violation of the statute."), the Court hopes that it will serve as a "wake-up call" for the national McDonald's Corporation to put in place training and other appropriate procedures for dealing with the deaf and the hearing impaired. It was conceded at trial that the parent McDonald's Corporation provides no training to its own employees or its franchise proprietors with respect to dealing with the deaf and hearing impaired.

Finally, the Court will order that the Defendants maintain records of incidents such as the one in this case. The Defendants could not identify the employees on duty at the time of the incident. The Court cannot understand why no records were kept regarding an incident that resulted in an arrest of a patron on the premises. The Court will require Defendants' employees to maintain records of all incidents involving hearing impaired persons. The Court wants to ensure that no person with a hearing disability be denied reasonable accommodations and that the Defendants will put in place effective means for communicating with such persons.

An appropriate order and judgment and injunction accompanies this opinion.

## ORDER AND JUDGMENT AND INJUNCTION

On December 19, 1997, the jury rendered a verdict in the above-captioned matter. It is hereby

**ORDERED** that judgment in the amount of $1500 plus costs be entered in favor of the Plaintiff. It is further

**ORDERED** that Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise be **PERMANENTLY ENJOINED** from discriminating against persons who are hearing disabled in the use of Defendants' facilities. It is further

**ORDERED** that Defendants shall be required to make available to hearing impaired customers access to the drive-through facility that is open to all customers, including, but not limited to placing a sign at the initial point of the drive-through facility to indicate to deaf and hearing impaired customers that they can proceed directly to the drive-through window to place their orders. It is further

**ORDERED** that once at that facility, Defendants shall provide hearing disabled persons with access to appropriate writing instruments to write down their order. It is further

**ORDERED** that Defendants shall establish written policies and establish a training program to deal effectively with the needs of deaf and hearing impaired customers. It is further

**ORDERED** that Defendants maintain records of incidents involving a disruption in service with respect to hearing disabled patrons. Said records shall include, but are not limited to, the name, phone number, and address of the hearing impaired customer; the date of the incident; the nature and resolution of the incident; and the names of the supervisor and all employees involved.

Said records shall be maintained for a period of at least five years.   It is further

**ORDERED** that the Court will retain jurisdiction of this matter to order such other and further relief as may be necessary to carry out this order.