**COLORADO CROSS–DISABILITY COALITION, a Colorado non-profit corporation, Carrie Ann Lucas, and Robin Stephens, Plaintiffs,**

v.

**TOO (DELAWARE), INC., a Delaware corporation, Defendant.**

**No. CIV. 02–B–2235 (CBS).**

United States District Court, D. Colorado.

Nov. 10, 2004.

Kevin W. Williams, Denver, CO, for Plaintiffs.

Jimmy Goh, Holland & Hart, LLP, K. Preston Oade, Jr., Holme, Roberts & Owen, LLP, Bruce W. Sattler, Faegre & Benson, Gregory A. Eurich, Holland & Hart, LLP, United States District Court, Philip Lance Gordon, Littler Mendelson, PC, David H. Goldberg, Schwartz & Goldberg, PC, Sandra Lea Spencer, White & Steele, P.C., Barbara Ann Grandjean, Jacobs, Chase, Frick, Kleinkopf & Kelley LLC, James D. Kilroy, Kyle Paul Seedorf, Snell & Wilmer, LLP, Brent T. Johnson, Fairfield & Woods, P.C., Denver, CO, Philip A. Gordon, Faegre & Benson, LLP, Boulder, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

This is an ADA action brought by wheelchair-bound Plaintiffs who bring one claim for declaratory judgment that the ADA requires retail clothing stores to maintain wheelchair-width access routes around moveable display racks. Plaintiffs also seek an affirmative injunction requiring Defendant to comply with the ADA as Plaintiffs interpret it. Plaintiffs move for partial summary judgment as to the meaning of the ADA in this context. Defendant Too (Delaware), Inc. ("Too") also moves for partial summary judgment.

The question presented by these cross-motions is whether the higher "readily accessible" standard of 42 U.S.C. § 12183(a)(1) or the lower "readily achievable" standard of 42 U.S.C. § 12182(b)(2) applies to Too's movable display racks in its stores. With the benefit of both the papers and oral argument, I hold that the latter standard applies to this case.

### I. Undisputed Facts

The parties' arguments rely wholly on interpretation of law, so the facts here are necessarily limited to a simple framework for my analysis of the applicable law.

Defendant is a retailer who sells goods for children and young adults. Plaintiffs are wheelchair-bound shoppers who shop in Defendant's store at the Flatirons Crossing Mall outside of Boulder, Colorado. On more than one occasion, Plaintiffs have entered Defendant's store, attempted to navigate around the moveable clothing display racks. The moveable display racks exist in a variety of forms. Circular racks are "rounders"; rectangular ones: "gondolas," or "T-stands"; "three-ways"; and "four ways." These moveable racks are arranged to visually entice potential shoppers to enter the store, and to present merchandise to customers. All of the moveable racks are on wheels, and store employees regularly move the racks to reflect marketing concepts reflective of seasonal themes.

Defendant says that it maintains maximum access to store merchandise and that moveable display racks are evenly spaced throughout the store. It also contends that its policies are handicapped-friendly, and require sales associates to actively assist handicapped customers in a variety of ways. Defendant contends that Plaintiffs may proceed unhindered by movable displays to the cash-wrap stand, the handicapped-accessible fitting rooms, and around the perimeter of the store. Defendant submits that maintaining a wheelchair-width space to and around every display would significantly reduce the amount of merchandise its store may offer for purchase, negatively affect marketing strategies, and ultimately reduce profits.

### II. Law

#### A. Summary Judgment

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Because the question presented at this stage of the case is purely one of law I need not determine whether genuine issues of material fact exist.

### III. Discussion

Defendant's cross-motion for partial summary judgment and Plaintiffs' motion for partial summary judgment, along with the respective responses, replies, and surreplies, address the same legal question. I

address Plaintiffs' contentions in the context of Defendant's interpretations of the law.

There is only one question for me to resolve. It is this: Whether the ADA's statutory provision defining discrimination in the context of a "readily achievable" standard, or in the context of a "readily accessible" standard, governs the arrangement of moveable displays in a retail store. Answering that question requires me to closely read the applicable statute sections, regulations, cases, and Department of Justice technical manuals and correspondence.

### A. Statute and Legislative History

42 U.S.C. § 12182(b)(2)(A)(iv) states:

[Discrimination ... includes] a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is **readily achievable.**

42 U.S.C. § 12183(a)(1) states:

[Discrimination ... includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are **readily accessible** to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.

It is undisputed that these provisions apply to retailers like Defendant. Under the "readily achievable" standard, I must consider the economic impact of the proposed accommodation, including loss of sales space. *See* 42 U.S.C. § 12181(9) (listing factors to be considered). Under the "readily accessible" standard, the disabled must be accommodated without consideration of cost. That standard applies only to facilities constructed for first occupancy after January 26, 1990. The parties agree that Congress contemplated the costs to businesses to retrofit existing buildings and decided that the more flexible, "readily achievable," standard was warranted, in contrast with the "readily accessible" standard for new buildings where ADA-related costs are included in the building's overall cost of construction. It is also agreed that there is no mention in these sections, on their faces, of moveable displays.

Plaintiff contends that the second, "readily accessible," standard applies to moveable displays. Defendant argues the opposite.

As a threshold issue, I note that Plaintiffs ask me to liberally construe the statute's sections and regulations within the broad scope of the ADA in protecting the rights of people with disabilities. Where a statute's text and legislative history do not support such a broad definition, however, I may decline to apply such a liberal construction. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). That said, my "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "To the extent that there may be doubt concerning the meaning of statutory text, ambiguity is easily removed by looking at

the legislative history." *Sutton* at 500, 119 S.Ct. 2139.

As an alternative to their specific arguments, Plaintiffs ask me to ignore the provisions of the statute, the legislative history, and the regulations that deal with retail buildings, fixed displays, and moveable displays under the ADA, and instead interpret the ADA "generally" under the "full and equal enjoyment" language of 42 U.S.C. § 12182(a) as forcing compliance with Plaintiff's view. I decline to do so, as such an interpretation would be inappropriate.

The moveable displays in this case are located within facilities whose design and construction was subject to the "readily accessible" standard because the facilities (the Flatirons Crossroads Mall building) were first occupied after January 26, 1993. Defendant contends that this fact is inconsequential to my analysis because Congress intended to regulate the arrangement of moveable displays under the "readily achievable" standard regardless of when the facility that houses the displays was constructed. I note that to the extent Plaintiffs argue the definition of "facility" includes "any equipment or personal property located on the site," they ignore the multiple definitions of "facility" in the ADA and its associated federal regulations, see below, that tie it synonymously to "building." *See* 42 U.S.C. § 12181; 56 C.F.R. 35408 *et seq.*

Section 12183(a)(1) (all statute sections herein are 42 U.S.C. sections) defines discrimination to include "*a failure to design and construct facilities for first occupancy* ... that are readily accessible to and usable by individuals with disabilities." (Emphasis added.) Thus, Defendant argues, by its own terms that section does not govern arrangement of objects *after* a facility has been designed and constructed for first occupancy. The legislative history

bears out the argument that design and construction refers to actions taken during the building process: "Because it costs far less to incorporate accessible design into the planning and construction of new buildings and of alterations, a higher standard of 'readily accessible to and usable by' persons with a disability has been adopted in the ADA for new construction and alterations." H.R.Rep. No. 485, 101st Cong., 2nd Sess., pt. 3, at 60 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 483 ("H.R.Rep. No. 485(III)").

Section 12182(b)(2)(A)(iv) defines discrimination to include "a failure to remove architectural barriers, and communication barriers that are structural in nature," but the ADA does not define the term "architectural barrier [of a] structural nature." Defendant argues that the term undoubtedly excludes moveable displays. They cite Webster's Third International Dictionary at 113 ("architectural" means "of, resembling, or relating to architecture"; "architecture" means "the art or practice of designing structures."), and at 2266 ("structural" means "of or relating to the load-bearing members or scheme of a building as opposed to the screening or ornamental elements"; structural elements include the "floor, joists, rafters, wall and partition studs, supporting columns, foundation."). Therefore, Defendant argues, nowhere in the ADA's plain language (in either section at issue here) is there an evident congressional intention to regulate the arrangement of moveable displays.

To the extent that the language is ambiguous, the legislative history sheds light on Congress' intent. As to Section 12182(b)(2)(A)(iv), Congress was explicit: "The section may require the removal of physical barriers, *including those created by the arrangement or location of ... movable structures [such] as furniture, equipment and display racks.* For exam-

ple, a restaurant may need to rearrange tables and chairs or *a department store may need to adjust its layout of display racks* and shelves." S.Rep. No. 116, 101st Cong., 1st Sess., at 66 (1989) (emphasis added); H.R.Rep. No. 485, 101st Cong., 2nd Sess., pt. 2, at 110, *reprinted in* 1990 U.S.C.C.A.N. 303, 393 ("H.R.Rep. No. 485(III)"). In another passage, Congress reiterated its intent in another way. "The same principles apply to the question of whether aisles have to be widened for persons who use wheelchairs. Again, *the test is whether the aisles would be readily achievable, that is, can be done without difficulty or expense.* If not, service must be provided in an alternative manner, if the alternative manner is readily achievable." H.R.Rep. No. III at 61 (emphasis added).

In contrast, Defendant says, the legislative history of Section 12183(a)(1) does not contain a single reference to the arrangement of movable displays or aisle spacing. The legislative history of that section does refer to "building and placing of fixtures and equipment":

> Two items regarding the placement of fixtures and equipment should be noted. As have often been pointed out, *it is always less expensive to build something new in an accessible manner than it is to retrofit an existing facility to make it accessible. That concept applies as well in the building and placement of fixtures and equipment.* Thus, if it would not affect usability or enjoyment by members of the general public, consideration should be given in new construction to placing fixtures and equipment at a convenient height for accessibility. In addition, if they are commercially available, and it would not affect usability or enjoyment by the general public, an effort should be made to purchase new fixtures and equipment that are adjustable so that reasonable

accommodations in the future may not pose undue hardships.

H.R.Rep. No. 485(II) at 119. Defendant contends that "retrofitting" is a concept that only applies to objects attached to a building, such as drinking fountains. Plaintiffs contend that moveable displays, by moving them, may be "retrofitted" within the context of this language. I find Defendant's characterization more plausible. And I note that throughout the ADA's legislative history, the noun "arrangement" refers to moveable items, while "placement" refers to built-in items. *Compare* language in §§ 12182 and 12183.

Defendant's contention that Congress chose not to apply the higher, "readily accessible" standard to moveable displays is consistent with Congress' concern about the costs of ADA compliance:

> This section [12182(b)(2)(A)(iv)] reflects the balance between the need to provide access for persons with disabilities and the desire to impose limited cost on businesses. Because retrofitting existing structures to make them fully accessible is costly, a far lower standard of accessibility has been adopted for existing structures—a standard of 'readily achievable.' Because it costs far less to incorporate accessible design into the planning and constructing of new buildings and of alterations, a higher standard of 'readily accessible to and usable by' persons with disabilities has been adopted in the ADA for new construction and alterations.

H.R.Rep. No. 485(III) at 60. When built-in and "fixed" structures are designed to be accessible before the building is constructed, the costs are readily ascertainable and can be assimilated into the overall budget. It makes sense that when an older building has to "retrofit" to comply with ADA standards that became law after

the building was constructed, retrofitting costs are unexpected, and often are a burden to the existing building owner or business operator. It does not make sense that the arrangement of moveable displays would be covered under the "readily accessible" standard. As Defendant contends, the arrangement of moveable displays-and any cost implications such as lost space for merchandise-has nothing to do with whether the building the displays are in was built later than 30 months after July 26, 1990 or not. *See, e.g., Morse v. Republican Party,* 517 U.S. 186, 209, 116 S.Ct. 1186, 134 L.Ed.2d 347 (1996) (rejecting proffered statutory construction because it would "defeat the purpose for which the House and eventually Congress as a whole adopted" the pertinent statute); *United States v. Forbes,* 806 F.Supp. 232, 235 (D.Colo.1992) ("A statute must be construed to avoid unintended or absurd results.").

Moreover, Congress rejected Plaintiffs' contention that they are entitled to a shopping experience identical to that of able-bodied customers *regardless of cost:*

The purpose of [12182(b)(2)(A)(iv) ] is to provide individuals with disabilities access to a representative selection of merchandise available in a department. The Committee does not intend that a department store separate each and every display fixture in order to provide wheelchair clearance maneuverability. It is sufficient if a customer who uses a wheelchair is able to determine, once in a department, that the store offers, for example, black leather jackets. Once that is determined, the customer can rely upon a salesperson to retrieve a black leather jacket in the customer's size.

A public accommodation would not be required to provide physical access if there is a flight of steps which would require extensive ramping or an elevator. The readily achievable standard only requires physical access that can be achieved without extensive restructuring or burdensome expense.

H.R.Rep. No. 485(II) at 110. I agree with Defendant that the most reasonable interpretation of the ADA and its legislative history is that the "readily achievable" standard applies to movable displays. The regulations provide further evidence that interpretation should prevail.

## B. Regulations

It is undisputed the United States Department of Justice ("DOJ") regulations governing buildings under the ADA are found in the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). Defendant argues the ADAAG does not regulate the arrangement of moveable displays, but other regulations do address the wheeled clothing racks.

First, the Architectural and Transportation Barriers Compliance Board ("the Board"), which drafted the ADAAG, stated in the preamble that "[t]hese guidelines are intended to address only that equipment that is fixed or built into the structure of the building." 56 C.F.R. 35414–15 (July 26, 1991). Next, the Board wrote in the "Purpose" section of the ADAAG that "scoping and technical requirements" of the guidelines "are to be applied during the design, construction, and alteration of buildings and facilities." *Id.* at § 1, p. 2. Defendant contends these two provisions indicate that the guidelines do not apply to the arrangement of moveable displays, something that undisputedly occurs after a building is constructed. I agree with this interpretation, especially since this is repeated in the clarifying comments to 4.1.3(12)(b): "[t]he scoping provision in 4.1.3(12)(b) applies to fixed shelves or display units allowing self-service by customers and requires such shelves and display

units be located on an accessible route. A sentence has been added to the provision to clarify that compliance with the forward and side reach ranges for wheelchair users is not required." 56 C.F.R. 35422.

Plaintiffs contend that when one reads discrete sections of the ADAAG, however, it is apparent that terms like "shelves" and "display units," because they stand alone without modifiers such as "built-in" or "fixed," refer to moveable displays. *See id.* at § 4.1.3(12)(b) (ss 4.1.3 is entitled "Accessible Buildings: New Construction"). They argue that where modifying language is used in one section (here, 12(a)), then omitted (12(b)), the omission is intentional. I disagree. When taken in context, it is clear to me that "shelves and display units" refers to built-in or fixed units. "Shelves" in § 4.1.3(12)(a) are listed as a kind of fixed or built-in storage facility. "Shelves or display units" in (12)(b) are then unmodified. That said, the most consistent reading of this considers the overriding purpose and intent of the ADAAG that I explained in the previous paragraph. With that as a guide, it is clear that the second, unmodified rendition of "shelves" refers to the shelves in (12)(a). *Cf. Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); 56 C.F.R. 35422 ("[t]he scoping provision in 4.1.3(12)(b) applies to fixed shelves or display units . . . ."). This interpretation is bolstered by Section 4.1.3's listing of fourteen other elements of buildings, such as doors, stairs, windows, drinking fountains, and toilets, all of which are fixed or built into the building. *See* 56 C.F.R. 35414–15 § 4.1.3(3)-(17). *See also,* 69 Fed.Reg. 44086, 44089, 44128 (comments published in the Federal Register in July of 2004

clarifying application of the ADAAG to new construction and planned building alterations to existing facilities).

Other DOJ regulations enforcing the ADA sections including section 12182 also indicate compliance with Congress' intent to regulate movable displays only under the "readily achievable" standard. See 28 C.F.R. pt. 36.304(b)(4) (2003) (the "rearrangement . . . of display racks" as a accommodation that might be "readily achievable"); *id.* at pt. 36.304(c)(2) (the "adjust[ment] [of] the layout of display units" among steps toward accessibility which might be "readily achievable"). The DOJ regulations even include one that specifically addresses the costs related to loss of selling space by moving display racks: "[t]he rearrangement of temporary or *movable structures, such as* furniture, equipment and *display racks is not readily achievable* to the extent that it results in a significant loss of selling or serving space." *Id.* at pt. 36.304(f). In contrast, the DOJ regulations enforcing the "readily accessible" standard of § 12183 are silent on the arrangement of movable displays. *See id.* pts. 36.401–36.407. My review of the regulations convinces me that the "readily achievable" standard applies to movable displays.

## C. Department of Justice Letter and Technical Manual

Defendant proffers a DOJ opinion letter (the "Copus letter"), Ex. G, which is on point and contrary to Plaintiff's position. It concludes that "the ADA requires that accessible paths be provided to all fixed racks and shelving in new construction, and that accessible paths be provided to movable racks to the extent that it is 'readily achievable' to do so." Ex. G at 2. The DOJ reasoned: "[b]ecause the ADA Standards [the ADAAG] establish the requirements for the construction or altera-

tion of a covered building or facility, the Standards apply to 'fixed' building elements-not to movable furniture or equipment." *Id.* This comports with the statute and regulations detailed above. Accordingly, I give this letter some deference. *See Equal Employment Opportunity Comm'n v. Arabian Am. Oil Co.,* 499 U.S. 244, 257, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (The level of deference "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade. . . .").

Defendant contends as well that the DOJ's Technical Assistance Manual, designed to help businesses comply with and understand the ADAAG, see Manual at 90:0901, also supports the conclusion that the arrangement of movable displays should be adjudicated under the "readily achievable" standard. The Manual classifies "rearranging . . . display racks" as the type of barrier removal that might be readily achievable, *id.* at 90:0920, and states that department stores do not have to adjust the layout of racks and shelves to accommodate wheelchairs if "it would result in a *significant* loss of serving or selling space." *Id.* at 0921 (emphasis added). The Manual also says that "[f]reestanding equipment is not covered by the ADAAG." *Id.* at 90:0928. I note that Defendant does not emphasize "significant loss of space" as I have. This language indicates to me that the average retail business owner who is reading the Technical Manual would understand that he must rearrange his display racks unless the rearrangement results in a significant loss of selling space. The parties have not briefed whether the Manual defines "significant" or how I would incorporate such a subjective measure into a declaratory judgment. While the Copus letter and Manual are not entitled to *Chevron-style*

deference, I give them some deference to the extent they are persuasive. *See Spector v. Norwegian Cruise Line, Ltd.,* 356 F.3d 641 (5th Cir.2004), citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**D. Cases**

Finally, Defendant contends that "every court to address the issue has applied the 'readily achievable' standard to the arrangement of movable objects." Defendant points me to three federal district courts and one California county court. Plaintiffs respond without analysis that the courts in these cases did not sensibly interpret the ADA. The main case is *Lieber v. Macy's West, Inc.,* 80 F.Supp.2d 1065 (N.D.Cal.1999). The *Lieber* court held that movable displays located in buildings of "new" construction or areas of alteration, like the movable displays here in Flatiron Crossing Mall, are subject to the "readily achievable" standard, not the "readily accessible" standard as interpreted by ADAAG § 4.1.3(12)(b).

After an exhaustive rendition of facts, the court applied the ADA and made the following conclusions. Macy's failed to provide physical access to moveable merchandise racks by removing barriers in a "readily achievable," way so violated Title III of the ADA. The store failed to make any efforts to widen its pathways to improve access inside moveable merchandise pads, that clearances were often less than 24 inches, that access could have been improved by simply adjusting placement of merchandise display units, that the store did not provide clerks to retrieve inaccessible merchandise, and that improved access would not have fundamentally altered the nature of Macy's business. *Id.*

*Lieber* was followed by at least three other courts cited by Defendant. *Califor-*

*nians for Disability Rights v. Mervyn's California, Inc.,* 20002–51738 (Alameda Cty. Sup.Ct. Jan. 20, 2004) cited *Lieber* and held that the "readily achievable" standard applied to the placement of movable displays in Mervyn's stores that were newly constructed or recently renovated, and that there "is no express spacing requirement that applies to movable racks under the ADA." *Id.* at 5–6, 28–30. *See also, Shimozono v. The May Dept. Stores, Inc.,* 00–04261, at 4 (C.D.Cal. Nov. 20, 2002), Ex. I; *Ass'n for Disabled Ams., Inc. v. Concorde Gaming Corp.,* 158 F.Supp.2d 1353 (S.D.Fla.2001) (holding that where the ADAAG supplied no design regulations-as in the case of a newly constructed cruise ship"the Court must apply only the barrier removal and modification provisions of Title III with their textual reasonableness/readily achievable component....").

Finally, during oral argument Defendant cited *Rodriguez v. Investco, LLC,* 305 F.Supp.2d 1278 (M.D.Fla.2004). In that case, the Middle District of Florida held that § 12182(b)(2)(A)(iv)'s "readily achievable" language applied to all facilities that have already been built, not just facilities built before January 26, 1993. *Rodriguez* at 1283.

None of the five cases cited by Defendant is binding here. As a sister federal district court, however, I look to the federal district court cases, including *Lieber,* for guidance. I conclude Defendant's interpretations of the ADA, its legislative history, and the DOJ regulations are in step with what these courts have decided.

In sum, I find Defendant's arguments convincing. I am also satisfied that Plaintiffs are not deprived of the access to Too's merchandise that Congress envisioned under the ADA. Plaintiffs may proceed unhindered by movable displays to the cashwrap stand, the handicapped-accessible fit-ting rooms, and around the perimeter of the store. If Plaintiffs encounter movable displays in their way, they may ask for help from salespeople who, under Too's own policies, will assist them by "graciously" moving the display. *See* Defendant's Ex. 1.

For all of the above reasons, I conclude that there are no genuine issues of material fact the preclude me from ruling as a matter of law that the "readily achievable" standard of 42 U.S.C. § 12182(b)(2)(A)(iv) applies to movable display racks in Defendant's stores.

ACCORDINGLY, IT IS ORDERED THAT:

1) DEFENDANT TOO (DELAWARE)'s cross-motion for partial summary judgment [141] is GRANTED;

2) PLAINTIFF's motion for partial summary judgment [136] is DENIED; and

3) The parties' joint motion for a stay pending resolution of the summary judgment motions [170] is DENIED AS MOOT.