Commonwealth of MASSACHUSETTS, The National Federation of the Blind, Inc., The National Federation of the Blind of Massachusetts, Inc., Adrienne Asch, Richard Downs, Theresa Jeraldi, and Philip Oliver, Plaintiffs,

v.

E*TRADE ACCESS, INC., E*Trade Bank, Cardtronics, LP, and Cardtronics, Inc., Defendants.

No. 03–CV–11206–MEL.

United States District Court, D. Massachusetts.

Feb. 21, 2006.

54

Patricia Correa, Attorney General's Office, Anthony M. Doniger, Christine M. Netski, Sugarman, Rogers, Barshak & Cohen, Boston, MA, Daniel F. Goldstein, Sharon Krevor–Weisbaum, Brown, Goldstein & Levy, LLP, Baltimore, MD, Amy F. Robertson, Timothy P. Fox, Fox & Robertson, PC, Denver, CO, for Plaintiffs.

Douglas P. Lobel, Cooley Godward LLP, Reston, VA, Jenny K. Cooper, Joseph L. Kociubes, Bingham Mccutchen LLP, Boston, MA, Leigh–Ann M. Durant, Nixon Peabody, LLP, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

LASKER, District Judge.

The Commonwealth of Massachusetts, the National Federation of the Blind, Inc., the National Federation of the Blind of Massachusetts, Inc., and a number of blind Massachusetts residents (collectively, "Plaintiffs") sue E*Trade Access, Inc. and E*Trade Bank (collectively, "E*Trade"), and Cardtronics, LP and Cardtronics, Inc. (collectively, "Cardtronics")[1], alleging vio-

1. Cardtronics acquired the ATM business of E*Trade on June 2, 2004. Cardtronics is now

lations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12182 and 12183. The Plaintiffs seek injunctive relief ordering the Defendants to modify their Automated Teller Machines ("ATMs") so that the blind may have access to and independently use such ATMs.

In February 2005, this Court denied E*Trade's motion for judgment on the pleadings. E*Trade asserted that judgment on the pleadings was appropriate because the Plaintiffs seek relief—specifically, the installation of voice-guidance technology—not required or authorized under the current implementing regulations of the United States Department of Justice ("DOJ"). While I found that the remedy of voice-guidance technology is neither mandated nor required by standard 4.34.5, I ruled that:

The Plaintiffs have put forward a legally sufficient claim that under the existing regulations the Defendants' ATMs are not accessible to or independently usable by the blind. It appears that the Plaintiffs may be able to prove a set of facts that would entitle them to some relief, aside from voice-guidance technology, required by the current DOJ regulations. Although their preferred remedy of voice-guidance technology is not available under the existing regulations, the Plaintiffs can seek "the necessary modifications to the ATMs they [E*Trade] operate or operate and lease, so that blind people may have access to and independently use these ATMs."

Order of February 22, 2005 at 9.

The Plaintiffs now move for partial summary judgment and declaratory and injunctive relief under Count V of the Third Amendment Complaint; the Defendants cross-move for summary judgment on Counts I through V.

### I. Analysis

#### A. Count V

 Count V alleges a violation of the ADA's new facilities mandate, 42 U.S.C. § 12183(a)(1). Discrimination for purposes of this subsection includes

a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.

The Plaintiffs move for summary judgment on the grounds that blind persons do not have access to and cannot independently use Cardtronics-owned ATMs constructed or installed after January 26, 1993, and seek an injunction specifying that the ATMs be brought into compliance with the ADA Accessibility Guidelines ("ADAAG") standard 4.34.5. 28 C.F.R. § 36.401, App. A, 4.34.5 (1991).

Cardtronics responds that: (1) the Plaintiffs request an impermissibly vague and unenforceable "obey the law" injunction; and (2) the Plaintiffs present no factual basis justifying summary judgment on approximately 25,000 ATMs nationwide. Moreover, the Defendants submit that summary judgment should be granted in their favor on Count V because § 12183(a)(1) does not apply to ATMs. Ac-

---

the country's largest independent owner/operator of ATMs, with a network of over 25,000 ATMs nationwide. While this network consists of both ATMS owned or leased by Cardtronics as well as ATMs owned by third-par-

ties but operated by Cardtronics, only the Cardtronics-owned ATMs are the subject of the Plaintiff's motion for partial summary judgment.

cording to the Defendants, § 12183(a)(1) encompasses only the construction of facilities for occupancy, not devices that might later be affixed to such facilities.

The Plaintiffs' motion for summary judgment on Count V is DENIED, because genuine issues of material fact remain. While the Plaintiffs present evidence demonstrating that approximately one dozen tested ATMs fail to provide appropriate accommodations and instructions for use by blind individuals, they have made no systematic showing that the entire fleet of Cardtronics-owned ATMs is not accessible to and independently usable by the blind. Although it would be unreasonable and unnecessary to require the Plaintiffs to test every post-January 26, 1993 Cardtronics ATM in order to demonstrate non-compliance with § 12183(a)(1), at the least the Plaintiffs must present a more comprehensive showing that documents the specific types of accessibility problems or design defects encountered in a larger sample of ATMs nationwide, and that explains why and how it is appropriate to conclude that those documented problems pervade the entire Cardtronics fleet. Indeed, it may be that the information necessary to reach such a conclusion may be secured by the relatively simple devices of requests for admissions or interrogatories addressed to the Defendants. However, the Court cannot grant summary judgment as to 25,000 ATMs based only on an extrapolation from the extremely limited data of record. Accordingly, summary judgment for the Plaintiffs is DENIED without prejudice to renewal on the basis of a more substantial factual showing.

The Defendants' motion for summary judgment on Count V is also DENIED. The Defendants assert that § 12183(a)(1) concerns only the construction of buildings and other facilities for occupancy and does not reach devices, such as ATMs, that might later be affixed to such facilities. In support of this argument, Cardtronics first refers to the language of § 12183(a)(1) and contends that an ATM is manufactured rather than "constructed", and used rather than "occupied". Next, the Defendants point to the DOJ's implementing regulations, which measure the statutory requirement of "first occupancy" by the date that one obtains "building permits" or "certifications of occupancy" for the "facility", and which define "structural impracticability" in relation to "terrain". 28 C.F.R. §§ 36.401(a)(2) and 36.401(c)(1) (1991). The Defendants submit that the events of first occupancy and obtaining building permits clearly do not apply to ATM construction and installation, and that terrain affects only the design of a building, not the design of an ATM. Finally, the Defendants argue that the case law under § 12183 demonstrates that this section of the ADA applies only to the design of facilities for occupancy, and not to fixtures or devices like ATMs. *See, e.g., Colorado Cross–Disability Coalition v. Too (Delaware), Inc.,* 344 F.Supp.2d 707, 710 (D.Colo.2004)(holding that § 12183(a)(1) does not apply to claims concerning alleged inaccessibility caused by movable display racks inside a clothing retailer, because "[t]he legislative history bears out the argument that design and construction refers to actions taken during the building process").

■ Although these arguments command serious attention, I find that applicable DOJ regulations and interpretative guidelines demonstrate that the new construction mandate does apply to ATMs that are affixed to or built into facilities. DOJ regulations define "facility", for ADA purposes, as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances,

roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 36.104 (1991). Interpretive guidance issued by the Access Board and adopted by the DOJ has specified that to be covered by ADAAG, equipment must be "fixed or built into the structure of a building". 56 Fed.Reg. 35,408 at *12 (July 26, 1991). ATMs fall within the category of built-in equipment subject to regulation under the statute. *Id.* at *28 (stating that "the legislative history of the ADA specifically mentions automatic teller machines (ATMs) as covered by the accessibility requirements"); *see also* ADA Title III Technical Assistance Manual, § III–5.3000 (1994 Supp.), *available at* http://www.ada.gov/taman3up.html ("Only equipment that is fixed or built in to the facility is covered by the accessibility standards (e.g., public pay telephones or built-in ATMs)."). Moreover, the Access Board's "Accessibility Guidelines Checklist For Buildings and Facilities", issued in October 1992 to help insure compliance with § 12183(a), includes a technical requirements survey form to assess whether ATMs comply with the statute's requirements. Survey form 22, entitled "Automated Teller Machines", specifically asks: "Are instructions and information for use made accessible to and independently usable by people with visual impairments?" *Available at* http://www.access-board.gov/adaag/checklist/ATMs.html.

In sum, relevant regulations and guidelines issued by the DOJ and the Access Board seem clearly to establish that built-in ATMs are facilities covered by the new construction mandate. The Defendants present no evidence suggesting that any ATMs at issue in this case are movable structures not contemplated during the building process, as was the case with the display racks at issue in *Colorado Cross Disability Coalition*. In fact, representations made to the Court indicate that the merchant-owned E*Trade ATMs are "typically physically embedded in walls or floors so that they cannot easily be removed ... and are hard-wired into a store's electrical system and telephone lines." (Defs. R. 12(b)(7) Mtn., at 6.) Accordingly, because § 12183 applies to built-in ATMs, summary judgment for the Defendants on Count V is DENIED.

**B. Count II**

The Defendants move for summary judgment on Count II, which alleges a violation of § 12182(b)(2)(A)(ii), the reasonable modification mandate. Under this subsection of the statute, discrimination is defined as:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii).

In contrast to the other counts of the complaint, Count II focuses on whether the Defendants must modify their policies, not whether they should redesign or retrofit the physical structure of the ATMs. The Plaintiffs contend that because the Defendants do not operate traditional brick-and-mortar banks with tellers, the only method by which a client can withdraw funds is through the use of an ATM. Thus, the Plaintiffs allege that E*Trade's policy of offering fee-free ATM transactions to its customers only at its own ATMs is discriminatory and should be modified. Spe-

cifically, because blind individuals cannot use E*Trade's inaccessible ATMs, they must pay a surcharge to conduct their banking at an accessible ATM not owned or operated by the Defendants. The Plaintiffs submit that the Court can order a modification under subsection (ii) without specifying precisely how the Defendants' policy must be altered, so long as it is reasonable to modify the policy. *See, e.g., Fortyune v. American Multi–Cinema, Inc.,* 364 F.3d 1075, 1087 (9th Cir.2004)(directing defendants to "modify its policies regarding companion seating to ensure that a companion of a wheelchair-bound patron be given priority in the use of companion seats ... [up until] ten (10) minutes prior to show time."). The Plaintiffs suggest that the Defendants can modify their policies to grant blind depositors fee-free transactions at accessible ATMs owned or operated by other companies.

The Defendants respond by asserting that a reasonable modification claim pursuant to subsection (ii) requires specificity, because "an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration." *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 688, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001); *see also Dudley v. Hannaford Bros. Co.,* 333 F.3d 299, 307 (1st Cir.2003)(plaintiff bears initial burden to prove that he "requested a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods; that the requested modification—or a modification like it—was necessary to afford that access; and that the defendant nonetheless refused to modify the policy or practice."); *Guckenberger v. Boston Univ.,* 974 F.Supp. 106, 146 (D.Mass.1997)("In the reasonable modifications context, the plain-

tiff has the initial burden of proving that a modification was requested and that the requested modification is generally reasonable"). Finally, the Defendants argue that the Plaintiffs never requested a reasonable modification.

Under subsection (b)(2)(A)(ii), which is at play here, a plaintiff bears the burden of establishing that he requested a specific reasonable accommodation to a policy which, if granted, would afford him access to the desired goods or services. Once the plaintiff meets that burden of showing that a modification is reasonable in a general sense, the defendant must make the modification unless he can show that such a change would work a fundamental alteration.

The Plaintiffs have requested a modification to the Defendants' policies. Although the letter sent by the Plaintiffs on November 20, 2002 specifically mentions accessibility pursuant to the ADAAG, thereby indicating that the design of the ATMs is potentially problematic, it also broadly states that ATMs "are inaccessible in violation of Title III of the Americans with Disabilities Act". The letter requests that the ATMs be made accessible, but does not specify whether that must occur solely through alterations to the ATMs themselves or whether a modification in policies could also serve as a suitable remedy. Under subsection (ii), a disabled plaintiff is required to request a reasonable modification in order to inform the operator of a public accommodation of his disability and to allow that operator to undertake suitable modifications. Here, the Plaintiffs' letter was sufficient for this purpose: "Please notify us within two weeks of this letter's date whether you agree to make your ATM's [sic] accessible, and, if so, whether there is any reason that you cannot reasonably accomplish this task within two years. Otherwise, we will pro-

ceed with litigation as necessary to ensure the accessibility of your fleet." Moreover, in Count II of the complaint the Plaintiffs do specifically request a modification of the Defendants' policies, and the Plaintiffs' opposition papers suggest the possible modification that blind depositors be granted fee-free transactions at accessible ATMs operated by other companies.

I conclude that this suggested modification to the Defendants' policies—allowing blind customers to use accessible ATMs operated by other companies without a surcharge—is generally reasonable. The record in this case establishes that ATMs with voice-guidance technology are accessible to and independently usable by the blind. This Court cannot require the Defendants to employ voice-guidance technology, as such technology is not required by the ADAAG. However, various ATM owners and operators have voluntarily installed new ATMs, or upgraded existing ATMs, to be voice accessible. Permitting blind individuals to use these ATMs without an additional surcharge is a reasonable way to accommodate blind E*Trade customers and does not, on its face, fundamentally alter the nature of the Defendants' services or business. E*Trade does not operate physical banks, but instead uses an exclusively mail and electronic business model. The suggested accommodation would allow the Defendants to continue to operate under this model and to provide electronic transactions to all customers, while also granting blind individuals access to and independent use of ATMs without paying a surcharge for such services. Accordingly, the burden now shifts to the Defendants to demonstrate that the suggested modification would fundamentally alter the nature of their electronic banking services. Summary judgment for the Defendants on Count II is DENIED.

## C. Count III

The Defendants move for summary judgment on Count III, which alleges a violation of § 12182(b)(2)(A)(iii), the auxiliary aids mandate. Subsection (iii) defines discrimination as:

a failure to take such steps as may be reasonably necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(iii). The Defendants contend that to prevail under this subsection, a plaintiff must identify the absent auxiliary aid and the necessary steps that can be taken to insure that such aid is provided. The Plaintiffs respond that they need only demonstrate a denial of service by virtue of the absence of an auxiliary aid, and the burden then shifts to the Defendants to prove the affirmative defenses of undue burden or fundamental alteration.

▆ I find that to establish a denial of services because of the absence of an auxiliary aid, the Plaintiffs have the burden of identifying the aid which they contend is missing. In cases granting relief under § 12182(b)(2)(A)(iii), the plaintiff routinely requests and identifies the specific auxiliary aid sought. For example, in *Lindgren v. Camphill Village Minnesota, Inc.*, a case relied upon by the Plaintiffs, the court held that an element of a subsection (iii) claim is proof that the defendant failed to take steps to ensure that the plaintiff was not denied services because of the absence of auxiliary aids. 2002 WL 1332796, at *5 (D.Minn.2002). The court ruled that these

necessary steps had to be "the steps Plaintiffs ask for." *Id.* In *Lindgren,* because the plaintiff "identified the accommodation—additional respite care—the cost of which on its face does not appear to exceed the benefit", the plaintiff had stated a sufficient claim. *Id.* at \*6–7. Case law under subsection (iii) uniformly demonstrates that relief is granted only when an auxiliary aid to remedy the alleged discrimination can be identified. *E.g., Roberts v. Kinder-Care Learning Centers, Inc.,* 86 F.3d 844 (8th Cir.1996)(identifying full-time, individualized care for disabled child); *Dryer v. Flower Hosp.,* 383 F.Supp.2d 934 (N.D.Ohio 2005)(identifying access to oxygen ports for visitors at hospital); *Burriola v. Greater Toledo YMCA,* 133 F.Supp.2d 1034 (N.D.Ohio 2001)(identifying specific training and techniques for use with autistic child); *Naiman v. New York University,* 1997 WL 249970 (S.D.N.Y.1997)(identifying qualified sign language interpreters); *Mayberry v. Von Valtier,* 843 F.Supp. 1160 (E.D.Mich.1994)(identifying interpreter for deaf patient); *Bunjer v. Edwards,* 985 F.Supp. 165 (D.D.C.1997)(identifying sign at drive-thru menu instructing deaf patrons to proceed to window).

In the instant case, the Plaintiffs present evidence that they have been denied the services of Defendants' ATMs, which are not accessible to and independently usable by the blind. However, they have not identified steps or auxiliary aids—other than voice-guidance technology not mandated by the ADAAG—available to remedy that denial of services. To avoid summary judgment, the Plaintiffs must do more than simply request that the ATMs be made accessible to or independently usable by the blind; they must specify what aids or steps can serve as the means to that end.

Given the serious questions presented by this case and the number of people affected, the Plaintiffs are accorded ninety (90) days to identify an auxiliary aid or service that, if provided, would render the Defendants' ATMs accessible to and independently usable by the blind. If the Plaintiffs fail to make such a showing, summary judgment on Count III will be GRANTED to the Defendants.

## D. Count IV

■ The Defendants move for summary judgment on Count IV, which alleges a violation of § 12182(b)(2)(A)(iv), the communication barrier removal mandate. Under this subsection of the statute, discrimination is defined as:

> a failure to remove architectural barriers, and communications barriers that are structural in nature, in existing facilities ... where such removal is readily achievable.

42 U.S.C. § 12182(b)(2)(A)(iv). The Defendants argue that a plaintiff bears the burden of both identifying an existing barrier and showing that it can be removed in a readily achievable manner. *Colorado Cross Disability Coalition v. Hermanson Family Ltd.,* 264 F.3d 999, 1007 (10th Cir.2001)("Plaintiff must initially introduce evidence tending to establish that the proposed method of architectural barrier removal is readily achievable"); *Brother v. CPL Investments, Inc.,* 317 F.Supp.2d 1358, 1370 (S.D.Fla.2004)("Plaintiff bears the initial burden of suggesting a method of removal for each barrier identified, and proffering evidence that their suggested method is readily achievable"); *Parr v. L & L Drive–Inn Restaurant,* 96 F.Supp.2d 1065, 1085 (D.Haw.2000)("To succeed on an ADA claim ... due to an *architectural barrier,* the plaintiff must also prove ... removal of a barrier is readily achievable")(emphasis in original).

While there is no First Circuit case that directly addresses the burden of proof un-

der this subsection of the statute, I agree that under § 12182(b)(2)(A)(iv), a plaintiff bears the burden of introducing evidence to establish that a suggested method of barrier removal is readily achievable. 42 U.S.C. § 12181(9). Only if a plaintiff satisfies this initial showing does the burden shift to the defendant to prove that the requested barrier removal method is not readily achievable. Practically speaking, there may often be an information imbalance between a plaintiff and a defendant, with the defendant possessing the additional experience and knowledge gained from owning and operating the facility containing the architectural or communications barrier. Nevertheless, a plaintiff should at a minimum provide a general removal plan and discuss its feasibility, bearing in mind both structural concerns and estimated costs.

In this case, the Plaintiffs have not met their burden of proffering a plan for barrier removal that is readily achievable. They have failed to indicate how the ATMs at issue can be made accessible to blind people other than through the use of voice-guidance technology, which is not mandated by the ADAAG. Absent any other suggestion as to how the Defendants can remove barriers which impede the accessibility and use of ATMs by the blind, summary judgment for the Defendants on Count IV is appropriate. *Access Now, Inc. v. South Florida Stadium Corp.,* 161 F.Supp.2d 1357, 1370 (S.D.Fla.2001)(plaintiff "completely failed to suggest a plan of modification, much less demonstrate that such modification would be readily achievable").

As in the ruling on Count III above, the Plaintiffs are granted ninety (90) days to specify how communications barriers can be removed consistently with the ADAAG, so that the ATMs in question will be made accessible to and independently usable by

the blind. If the Plaintiffs fail to make such a showing, summary judgment on Count IV will be GRANTED to the Defendants.

### E. Count I

Finally, the Defendants move for summary judgment on Count I, which alleges a violation of § 12182(a), the ADA's general prohibition against discrimination. This subsection provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by a person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The Defendants argue that section (a) does not provide an independent basis for recovery when a plaintiff seeks recovery under the more specific provisions of § 12182(b). Rather, the Defendants assert, "the question of whether [a party] has violated" the general rule of § 12182(a) "depends upon a proper construction of the term 'discrimination'" as defined in § 12182(b). *Martin,* 532 U.S. at 681–82, 121 S.Ct. 1879. The Defendants therefore contend that because they are entitled to summary judgment on all the Plaintiffs' claims pursuant to section § 12182(b), they are also entitled to summary judgment on the Plaintiffs' claim under section (a). However, as outlined above, summary judgment has been denied for the Defendants on Count II, pursuant to § 12182(b)(2)(A)(ii), and has not yet been granted on Counts III and IV, pursuant to §§ 12182(b)(2)(A)(iii) and 12182(b)(2)(A)(iv). Accordingly, the Defendants' motion for summary judgment on Count I is DENIED without prejudice

to renewal depending on the future direction of the case.

\* \* \* \* \* \*

In conclusion, summary judgment for both the Plaintiffs and the Defendants is DENIED as to Count V. However, the Plaintiffs' motion is subject to renewal under a more fully developed record.

Summary judgment for Cardtronics on Counts I and II is DENIED.

As to Count III, the Plaintiffs are granted ninety (90) days to identify an auxiliary aid or service. If they fail to make such a showing, summary judgment on Count III will be GRANTED to Cardtronics.

As to Count IV, the Plaintiffs are granted ninety (90) days to specify how communications barriers can be removed consistently with the ADAAG. If they fail to make such a showing, summary judgment on Count IV will be GRANTED to Cardtronics.

It is so ordered.